**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **SHELLY D. ALBERT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 1:13CV125NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.**[1] | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Shelly D. Albert (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 <u>et seq.</u>, and for supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 <u>et seq.</u>  Plaintiff has filed a brief in support of the Complaint.  (Doc. 14).  Defendant has filed a brief in support of the Answer.  (Doc. 20).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c).  (Doc. 15).

**I.**
**PROCEDURAL HISTORY**

On February 24, 2011, Plaintiff filed her applications for DIB and SSI, alleging a disability onset date of November 1, 2009.  (Tr. 9, 134, 138).  Plaintiff's applications were denied, and she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 9, 82, 89).

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant.  No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

After a hearing, in a decision dated November 30, 2012, the ALJ found Plaintiff not disabled. (Tr. 9-22). The Appeals Council denied Plaintiff's request for review. (Tr. 1-4). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).

"Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have

decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).  "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship

between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

>   (1) the claimant's daily activities;
>
>   (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
>   (3) any precipitating or aggravating factors;
>
>   (4) the dosage, effectiveness, and side effects of any medication; and
>
>   (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed,

524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally

sufficient reasons.  See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v.

Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir.

1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's

final determination that Plaintiff was not disabled.  See Onstead, 962 F.2d at 804.  Thus, even if

there is substantial evidence that would support a decision opposite to that of the Commissioner,

the court must affirm his decision as long as there is substantial evidence in favor of the

Commissioner's position.  See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

In a Disability Report – Adult, Plaintiff alleged she was disabled due to neck and back

pain and depression.  (Tr. 160).  At the hearing, Plaintiff testified that she had neck pain, which

caused her to have headaches and numbness in her arms and hands; she had numbness in her

fingers; she had back pain which went down her right leg; her back pain was "consistent" and

"probably 6 to 7 continually"; the most she could lift was "maybe a bag of groceries or a gallon

of milk"; if she lifted more than that it increased her pain level; sitting in a recliner helped her

back pain; oxycodone took "the edge off" her pain; her medications made her drowsy and tired;

she did not remember if she ever told a doctor about the side effects of her medications; she had

headaches two to three times a week; the headaches hurt from the back of her neck up to her eye

lobes; the pain from her headaches was "nauseating, [] sharp, [and] pulsating"; when she had

headaches she could not do anything; the headaches lasted from a few hours to three days; her

blood pressure was "up and down"; when her blood pressure was up, she became flushed and

"sweating all over"; she had "depression big time," as a result of her conditions; she felt

depressed all the time and sometimes had crying spells; she had crying spells once or twice a

week; she had "a lot of fogginess"; she lost all of her social life; she did not handle stress well because it increased her pain, especially in her back; she had difficulty completing tasks; at the time of the hearing, she could "probably" walk a "quarter mile, half a mile," and, if she walked a half mile, she would have to rest intermittently; she walked a half mile, "at least," every day; doctors told her to do this; at the end of the half mile her pain increased and she was exhausted; she could be on her feet ten to fifteen minutes before she had to sit down; she could sit in a regular chair, "at most," a half hour to forty-five minutes before having to get up and move around; and climbing stairs increased her pain. (Tr. 38-45).

The ALJ found Plaintiff met the insured status requirements through June 30, 2013; she had not engaged in substantial gainful activity since her alleged onset date, November 1, 2009; Plaintiff had the severe impairments of degenerative disc disease, osteoarthritis, plantar heel spur, and obesity; she did not have an impairment or combination of impairments that met or medically equaled a listed impairment; Plaintiff had the RFC for light work, except that she was limited to unskilled work; Plaintiff could perform her past relevant work (as she performed it) as a janitor; there were others jobs which Plaintiff could perform existing in significant numbers in the national economy; and, therefore, Plaintiff was not disabled.

Plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ failed to give controlling weight to the opinion of Plaintiff's treating doctor, Thomas K. Lee, M.D., that Plaintiff was unable to work; the ALJ failed to properly assess Plaintiff's credibility; and the ALJ failed to consider Plaintiff's fatigue and insomnia when determining her RFC. For the following reasons, the court finds that Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence.

**A. Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including the weight given to Dr. Lee's opinion. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. See Guilliams, 393 F.3d at 801; Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218

(8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of her credibility determination are based on substantial evidence.

First, as considered by the ALJ, although Plaintiff alleged disability due to depression, she did not seek or receive ongoing care from a psychiatrist, psychologist, or other mental health specialist. (Tr. 332). Seeking limited medical treatment is inconsistent with claims of disabling pain or a disabling condition. See Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) (A[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment.@); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (A[Claimant=s] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ=s decision to deny benefits.@). Although Plaintiff took an antidepressant, Cymbalta, it was prescribed by her general practitioner. (Tr. 17). A lack of regular treatment for an alleged disabling condition detracts from a claimant=s credibility. See Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination a claimant lacked credibility due in part to "absence of hospitalizations . . . , limited treatment of symptoms, [and] failure to diligently seek medical care"); 20 C.F.R. § 404.1529(c)(3)(v) (the agency will consider the claimant's treatment when evaluating her symptoms): Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (citing Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)); Comstock v. Chater, 91 F.3d 1143, 1146-46 (8th Cir. 1996) (citing Benskin, 830 F.2d at 884); Polaski, 739 F.2d at 1322.

Second, Plaintiff reported that Cymbalta gave her "good symptom control." (Tr. 332). Additionally, Plaintiff told Dr. Lee, in October 2009, prior to her alleged onset date, that her headaches had resolved. On October 21, 2010, Plaintiff told Dr. Lee that medication helped her sleep better. (Tr. 244). She also denied headaches in March, May and June 2012. (Tr. 18, 249, 331-32, 334, 338). Finally, on July 11, 2012, Plaintiff reported that her pain medications were "helping and improving her daily functioning and sleep and pain [were] tolerable." (sic) (Tr. 367). Conditions which can be controlled by treatment are not disabling. See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling).

Although Plaintiff testified her medication made her drowsy, records do not reflect that she complained of such a side effect to her doctors. In fact, records of May 21, 2012, reflect that there were no "possible adverse reactions" to Plaintiff's medications, and records of July 11, 2012, reflect that Plaintiff did not have side effects from narcotics she was taking. (Tr. 370, 367). See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the ALJ to consider the fact that no medical records during this time period mention [the claimant=s] having side effects from any medication."); cf. Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006) (contradictions between claimant=s sworn testimony and what he actually told physicians weighs against claimant=s credibility).

Third, although Dr. Lee recommended surgery, it was subsequently recommended that Plaintiff receive conservative treatment. Plaintiff testified that it was recommended by her doctor that she walk. In April 2010, Dr. Lee recommended, among other things, neck and core lumbar stabilization exercises. (Tr. 246). Also, on September 12, 2012, Dr. Scott reported that, given the absence of "any structural pathology," "conservative treatment was the best option." (Tr. 350). To the extent Plaintiff said she did not have surgery because she could not afford it, the record does not reflect that she sought and was denied treatment available to indigents. See Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (holding that, despite a plaintiff's argument that he was unable to afford prescription pain medication, an ALJ may discredit complaints of disabling pain where there is no evidence that the claimant sought treatment available to indigents).

Fourth, Plaintiff was repeatedly advised to stop smoking and to lose weight by exercise and diet control, and doctors discussed smoking cessation with her; "various methods of [smoking cessation] assistance" were offered to her. Nonetheless, Plaintiff continued to smoke and did not lose weight. (Tr. 350, 354, 342, 349, 354, 368-69, 372-73). Also, in April 2010, when Dr. Lee offered trigger point injections, Plaintiff said she was not interested at that time. When he discussed pain management, Plaintiff said she would consider it when she got coverage. (Tr. 246). See Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain).

Fifth, the ALJ considered that Plaintiff's daily activities were inconsistent with her allegations that she was unable to perform substantial gainful activity, even at the sedentary level. (Tr. 19-20). Although Plaintiff stated in a Function Report – Adult that, on a good day she could only walk a city block, and, on a bad day, she could only walk from the bedroom to the kitchen (Tr. 179), as stated above, she testified that she walked a half-mile every day. Also, Plaintiff reported to a health care provider, on July 16, 2011, that she was taking care of her sick grandfather. (Tr. 320). While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. See Clevenger v. Soc. Sec. Admin., 567 F.3d 971, 976 (8th Cir. 2009) (recognizing that cases send mixed signals about significance of daily activities, but noting claimant reported she engaged in an array of activities; it was not unreasonable under case law for ALJ to rely on this evidence to infer claimant's assertion of disabling pain was not entirely credible); Pirtle v. Astrue, 479 F.3d 931, 935 (8th Cir. 2007) (claimant's ability to homeschool her two children was inconsistent with allegation of disability); Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (ALJ properly considered that plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling Apain may be discredited by evidence of daily activities inconsistent with such allegations.@ Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001). AInconsistencies between [a claimant=s] subjective complaints and [his] activities diminish [his] credibility.@ Goff, 421 F.3d

at 792. See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant=s daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).

Sixth, in July 2011, Plaintiff reported that her anxiety and stress had increased from taking care of her grandfather. (Tr. 320). See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations).

Seventh, as considered by the ALJ, objective medical testing results and doctors' examination and observations were not consistent with Plaintiff's allegations. See Halverson v. Astrue, 600 F.3d 922, 933 (8th Cir. 2010) (doctor's observations were inconsistent with claimant's allegations of disability); Eichelberger, 290 F.3d at 589 (A[A]n ALJ may disbelieve a claimant=s subjective reports of pain because of inconsistencies or other circumstances.@). Specifically, in regard to Plaintiff's back pain and extremity pain, a July 15, 2008 MRI of Plaintiff's lumbar spine showed "mild broad based disc protrusion and facet hypertrophy, producing mild left foraminal encroachment at L$-5 and L5-S1." (Tr. 258). A MRI of Plaintiff's cervical spine, on this same date, showed "broad based disc bulge/herniation and bilateral foraminal encroachment at C6-7," and mild annular disc bulge at C3-4, C4-5 and C5-6. (Tr. 257). On October 22, 2009, Dr. Lee reported that Plaintiff could heel walk symmetrically, and squat and rise from a full squat. (Tr. 249). On examination, on April 22, 2010, Plaintiff had tenderness in her back, but her sensation was intact in her upper extremities; and her motor strength testing was 5/5, bilaterally, in the upper and lower extremities and +4/5 in the right

quadriceps.  (Tr. 246).  On December 6, 2011, although Plaintiff was tender to palpation, her motor strength in her lower extremities was 5/5 in the bilateral quadriceps, ankle dorsiflexors, and ankle plantarflexors.  (Tr. 292).  On June 29, 2012, Plaintiff had normal gait and station; she had tenderness in the cervical, lumbar and sacral spine; she had normal muscle strength in the cervical spine; and a neurological exam was normal, with a normal motor system, sensory system, and reflexes.  (Tr. 342).  On July 11, 2012, Plaintiff's cervical, lumbar, and sacral spine were tender; she had normal muscle strength in the cervical spine; her thoracic spine had normal palpation, range of motion, muscle strength, tone, and stability; her lumbar spine had normal muscle strength; and her gait and station were normal.  (Tr. 369).  On August 10, 2012, Plaintiff had normal gait and station; normal range of motion, muscle strength and tone, and stability in the thoracic spine, and normal muscle strength in the cervical and lumbar spine.  (Tr. 354).  On September 12, 2012, Plaintiff had normal muscle strength in all major muscle groups, and a neurological examination showed normal motor coordination and normal overall tone, and that vibration and proprioception senses were intact.  In fact, on this date, Brandon Scott, D.O., reported that, although Plaintiff presented with lower back pain, he did "not see any structural pathology that would explain her symptoms."  (Tr. 349-50).

As for Plaintiff's headaches, which she testified she had two or three times a week, not only did she tell Dr. Lee, in October 2009, that her headaches had resolved, but a CT of Plaintiff's head, in April 2008, was normal and showed no mass, subdural or epidural hematomas or boney abnormalities.  (Tr. 237, 249).

As for Plaintiff's hypertension, her blood pressure was 133/104 on June 29, 2012 (Tr. 341), 147/99 on July 11, 2012 (Tr. 368), 120/80 on August 10, 2012 (Tr. 353), and 140/92 on September 12, 2012 (Tr. 349).    http://www.mayoclinic.or/diseases-conditions/high-blood-

presure/in-depth/blood-presure/ART-20050982 (last accessed 02/27/2014) (systolic (top number) below 120 and diastolic (bottom number) below 80 is normal blood pressure; 120-139 over 80-89 is prehypertension; 140-159 over 90-99 is stage 1 hypertension; 160 or more over 100 or more is stage 2 hypertension; adopting a healthy lifestyle is recommended for prehypertension).

As for Plaintiff's alleged mental impairment, on June 29, 2012, she had a normal level of consciousness, orientation, judgment and insight, memory, mood and affect, language, fund of knowledge, and capacity for sustained mental activity; she also had a normal mental status examination. (Tr. 342). On August 21, 2012, Plaintiff had a normal level of consciousness, orientation, judgment and insight, memory, mood, and affect. (Tr. 354). On September 12, 2012, her mental status fund of knowledge was average; her recent/remote memory was intact; and she was oriented to person, place, and time. (Tr. 349).

Eighth, although Dr. Lee reported, on October 21, 2010, that Plaintiff had been unable to work for a year (Tr. 244), he also reported on October 22, 2009, that Plaintiff was "continuing to work with [] hospice patients in their homes" (Tr. 249), and, on April 22, 2010, that Plaintiff had lost her job and was doing private duty nursing (Tr. 246). Significantly, Plaintiff alleged she was disabled as of November 2009. AActs which are inconsistent with a claimant=s assertion of disability reflect negatively upon that claimant=s credibility.@ Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). AWorking generally demonstrates an ability to perform a substantial gainful activity.@ Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (citing Nabor v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994)). 20 C.F.R. ' 404.1574(a) provides that if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity. Moreover, when a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has

been a significant deterioration in that impairment during the relevant period. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). See also Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) (A[D]espite suffering from what she calls Aextreme fatigue,@ Van Vickle continued working for over four years.@). Further, working after the onset of an impairment is evidence of an ability to work. Goff v. Barnhart, 421 F.3d, 793 (8th Cir. 2005); Goswell v. Apfel, 242 F.3d 793, 798 (8th Cir. 2001). Even part-time work which was not at the substantial gainful activity level may demonstrate a claimant is able to do more work than she actually did. See 20 C.F.R. ' 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); Douglas v. Barnhart, 130 Fed. Appx. 57, 59 (8th Cir. 2005) (unpublished per curiam).

Although Plaintiff argues that the ALJ failed to specify which records documents Plaintiff's continued work activity (Doc. 14 at 13), Plaintiff's working during the relevant period was only one factor upon which the ALJ relied and Plaintiff offers no explanation, other than her testimony (Tr. 48) why Dr. Lee would have spontaneously reported that Plaintiff was working. As the trier of act, the ALJ's consideration of this apparent inconsistency is entitled to deference. See Karlix, 457 F.3d at 748 (affirming where ALJ found claimant unreliable where his testimony regarding his consumption of alcohol conflicted with medical records; inconsistency between claimant's testimony and what he actually told physicians was sufficient to discredit him).

Ninth, the ALJ considered that Plaintiff was financially motivated to obtain benefits. Indeed, as noted by Defendant, there was no overt evidence of symptom exaggeration in an attempt to obtain benefits. (Doc. 20 at 10). Nonetheless, Plaintiff's financial motivation was only one of many factors considered by the ALJ, and substantial evidence supports the ALJ's ultimate credibility determination. See Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008); Senne

v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.").

**B.     Dr. Lee's Opinion:**

Dr. Lee, who was Plaintiff's treating physician, opined on a form, dated March 2, 2012, and titled "Physician's Assessment for Social Security Disability Claim," that Plaintiff suffered from a herniated nucleus protrusion, disc protrusions, and tailbone pain, and that, in his professional opinion, Plaintiff needed to rest four hours in an 8-hour workday and was unable to work for eight hours a day.   (Tr. 317).   Plaintiff argues that, as her treating doctor, the ALJ should have given Dr. Lee's opinion controlling weight.   "A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record." Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. ' 404.1527(d)(2) (2000)).   Indeed, the ALJ noted Dr. Lee was a treating source, but declined to give his opinion controlling weight.   The court finds, for the following reasons, that the ALJ was not required to give controlling weight to Dr. Lee's opinion and that substantial evidence supports the ALJ's decision in regard to the weight given to Dr. Lee's opinion.

First, as discussed above in regard to Plaintiff's credibility, objective medical test results and examination by other doctors were not consistent with Dr. Lee's opinion.   In particular, Dr. Scott reported, in September 2012, that there was no structural pathology to explain Plaintiff's reported symptoms.   See Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician=s opinion is given controlling weight "if it is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence@).

Second, as set forth above in regard to Plaintiff's credibility, Dr. Lee's opinion that Plaintiff could not work an 8-hour day was inconsistent with his own treatment notes, including his notes reflecting that Plaintiff had normal gait and normal muscle tone and that she worked during the relevant period. See Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009) (AIt is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes.@); Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician=s notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment).

Third, Dr. Lee expressed his opinion that Plaintiff was unable to work by a cursory statement on a form. Cf. Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan 239 F.3d at 961 (treating physician=s checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence); Social Security Ruling (SSR) 96-2p; Ward v. Heckler, 786 F.2d 844, 846 (8th Cir. 1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature.@).

Fourth, it was the job of the ALJ to evaluate the record as a whole; Dr. Lee's opinion was, therefore, not determinative. See Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001) (AAlthough a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole.@).

Fifth, Dr. Lee's opinion is not supported by detailed, clinical, or diagnostic evidence. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, or diagnostic evidence).

Sixth, Dr. Lee did not opine in treatment notes that Plaintiff would have to rest four hours in an 8-hour workday, see Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (upholding ALJ=s decision to discount treating physician=s medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); and, in fact, as discussed above, Dr. Lee, as well as other doctors, instructed Plaintiff to exercise and increase her level of physical activity, see Martise v. Astrue, 641 F.3d 909, 925 (8th Cir. 2011) ("[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight.").

Seventh, despite Plaintiff's assertion to the contrary, the ALJ did not play doctor. Rather, as required by the Regulations and case law, the ALJ evaluated the record as a whole prior to determining Plaintiff's RFC.

Eighth, the ALJ gave good reasons for failing to give controlling weight to Dr. Lee's opinion. See SSR 96-2p, at *5 (clarifying that 20 C.F.R. ' ' 404.1527 and 416.927 require that ALJ provide Agood reasons in the notice of the determination or decision for the weight given to a treating source=s medical opinion(s)@).

## C.    Plaintiff's RFC:

The Regulations define RFC as Awhat [the claimant] can do@ despite his or her Aphysical or mental limitations.@ 20 C.F.R. ' 404.1545(a). AWhen determining whether a claimant can

engage in substantial employment, an ALJ must consider the combination of the claimant=s mental and physical impairments.@ Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). AThe ALJ must assess a claimant=s RFC based on all relevant, credible evidence in the record, >including the medical records, observations of treating physicians and others, and an individual=s own description of his limitations.=@ Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant=s RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant=s impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant=s RFC is primarily the responsibility of the ALJ, a Aclaimant's residual functional capacity is a medical question.=@ Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that A>[s]ome medical evidence,= Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant=s >ability to function in the workplace,= Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).@

The ALJ in the matter under consideration found Plaintiff had the RFC to perform light work, except that she is limited to unskilled work. The Regulations define light work as >involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds.@ 20 C.F.R. ' 404.1567(b). Additionally, A[s]ince frequent lifting or carrying requires being on one=s feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.@ SSR 83-10, 1983 WL 31251, at *6. Upon reaching his RFC determination, the ALJ considered

the medical records and Plaintiff's credibility. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (AThe Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.@). Notably, the ALJ did not include limitations regarding Plaintiff's reported fatigue and insomnia, but he was not required to do so given his credibility determination. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) (AThe ALJ included all of Tindell=s credible limitations in his RFC assessment, and the ALJ=s conclusions are supported by substantial evidence in the record.@). Significantly, as discussed above, in regard to Plaintiff's alleged insomnia, she reported that medication helped. Based on the medical records and the ALJ's credibility determination, the court finds that the ALJ's RFC determination is based on substantial evidence.

The VE testified that, with the RFC which the ALJ assigned to her, there were jobs in that national economy which Plaintiff could perform. Indeed, the VE also testified that if Plaintiff had to take a fifteen minute break every hour or so, and that during these breaks she had to lie down or stretch, she would not be able to perform jobs which he testified a person with Plaintiff's RFC could perform. (Tr. 62-64). The ALJ, however, did not include these additional limitations in Plaintiff's RFC; rather, she included limitations which she found credible, and limited Plaintiff to light unskilled work. See Renstrom v. Astrue, 680 F.3d 1057, 1067 (8th Cir. 2012); Martise v. Astrue, 641 F.3d 909, 927(8th Cir. 2011) (AThe ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.@); Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[T]he ALJ was not obligated to include limitations from opinions he properly disregarded."); Guilliams v. Barnhart, 393 F.3d 789, 804 (8th Cir. 2005) (proper hypotheticals set forth

impairments supported by substantial evidence and accepted as true by ALJ).  Thus, the VE's testimony provides substantial evidence to support the ALJ's decision that there was work which Plaintiff could perform and that, therefore, she was not disabled.  See Martise, 641 F.3d at 927 (ABased on our previous conclusion ... that >the ALJ's findings of [the claimant=s] RFC are supported by substantial evidence,= we hold that >[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner=s denial of benefits.@) (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE=s testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant=s limitations).

**IV.**
**CONCLUSION**

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 14.

**IT IS FURTHER ORDERED** that a separate judgment will be entered incorporating this Memorandum and Order.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of May 2014.